**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARENCE ABNEY,** | : | **Civil No. 1:16-CV-350** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **LISA W. BASIAL, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

**I.   INTRODUCTION**

This is one of two actions brought by Clarence Abney, an inmate in the custody of the Pennsylvania Department of Corrections (DOC).  In this case Abney has brought claims alleging that nine employees of the DOC and a Senior Deputy Attorney General conspired in a variety of ways to harass and intimidate him in order to retaliate against him for bringing an earlier lawsuit alleging that a number of corrections officers subjected him to a severe beating that resulted in Abney suffering serious injuries.

The defendants in the instant action have filed a motion to dismiss Abney's new claims, asserting that the claims are untimely, were never properly exhausted in contravention of the Prison Litigation Reform Act, and because the amended

complaint—which contains 157 separate factual averments--lacks sufficient factual allegations to support the claims.  One of the defendants, Senior Deputy Attorney General Lisa Basial, has additionally argued that she is entitled to absolute immunity from Abney's claims.  The motion to dismiss is fully briefed and is ripe for disposition.

Before turning to Abney's claims and the defendants' motion, the court is constrained to observe that Abney's claims in this case are truly extraordinary, and put to the test the permissive pleading standards that apply in federal civil practice. The claims also challenge the standards that govern motions to dismiss, where federal courts are enjoined to accept all plausible allegations as true for purposes of resolving a preliminary dispositive motion.  As will be discussed, although the court finds that the amended complaint sets forth "plausible" allegations of serious wrongdoing, in a number of places appears to do so on little more than the plaintiff's subjective information and belief.  This is particularly true with respect to the allegations brought against Attorney Basial, who is alleged to have been the guiding hand behind a clandestine conspiracy in which she allegedly directed the movement of a state inmate specifically to harass and intimidate that inmate; that she arranged for an "illegal and abusive transport" of the inmate; and that she and others "cooperated and encouraged one another in a program of harassment and intimidation against Abney specifically in the context of his lawsuit against the

2

corrections officers named as defendants in <u>Abney v. Younker</u>." (Am. Compl. ¶115.)  Abney goes so far as to allege that Basial engaged in this conduct out of mere "annoyance at Abney" stemming from discovery disputes in that action, which Abney claims caused Basial to "conceal her own wrongful collusion with the Huntingdon defendants to engage in intimidation of Abney's witnesses in that litigation." (*Id.* ¶ 114.)  To say that these allegations are extraordinary is an understatement, particularly when Abney's factual basis for making such searing allegations against a seasoned member of the bar and the Office of Attorney General are, at this stage, lacking any apparent evidentiary support.

But as will be discussed, at this early stage of the litigation, when considering a motion to dismiss, the court is required to accept as true Abney's well-pled allegations even where they appear to be based on little more than information and belief. With the scope of our review confined to what is pleaded, the court finds that when applying this standard to the pending motion to dismiss, it should be denied.

However, in recommending that the motion be denied, the court is not unmindful of the substantive arguments that the defendants have interposed, and which may ultimately prevail in this case if they are borne out by the evidence.  A number of these arguments may admit of more fulsome consideration on a summary judgment record, where the plaintiff will be required to present evidence

to support his many assertions regarding whether he actually exhausted his claims prior to bringing suit, and to offer some substantive support for his breathtaking allegations of misconduct and inter-agency conspiracy to violate his rights. Accordingly, it will be recommended that the defendants be invited to promptly test Abney's claims, and their own arguments in favor of dismissal, through a properly documented motion for summary judgment, which is the more appropriate procedural vehicle to consider their contentions regarding Abney's claims against them.

## II.   <u>FACTUAL BACKGROUND</u>

This lawsuit has its origins in another civil action pending before this court, *Abney v. Younker*, et al., No. 1:13-cv-1418 ("*Abney I*"), in which Clarence Abney brought claims against a number of corrections officers and other officials at the State Correctional Institution at Huntingdon, alleging that these officers subjected Abney to a near-fatal beating in June 2012.  Abney alleges that when these SCI-Huntingdon defendants learned that Abney had sued them in federal court, they took steps to prevent Abney and inmate-witnesses from giving testimony on Abney's behalf, including by verbally threatening them and by severely beating one inmate-witness, Gerry Mobley, Jr., while Mobley was handcuffed.  Abney claims that these officers engaged in a campaign of retaliation and fear in order to

4

get back at Abney for making claims against them, and in an attempt to scuttle the litigation.

Abney alleges that he notified his lawyer about the alleged misconduct at SCI-Huntingdon, including the harassment and beating of Mobley, and allegations that inmates had heard some of the SCI-Huntingdon defendants planning to cover up their part in Abney's beating. Abney's lawyer attests that she notified Lisa W. Basial, a Senior Deputy in the Office of Attorney General (OAG) who was representing the SCI-Huntingdon defendants, regarding the alleged misconduct, and she asked that Basial intervene and direct her clients to discontinue improper contact with the inmate-witnesses. According to Abney, Basial refused to intervene, and the intimidation of inmates allegedly continued.

Abney alleges not only that Basial declined to instruct her clients to cease inappropriate contact with inmate-witnesses, but that she affirmatively took steps in October and November 2013, to prevent Abney from meeting with his lawyer to prepare for a deposition in *Abney I*. Abney claims that Basial inappropriately utilized an internal OAG-DOC procedure that is used to transport inmates for court appearances in order to have Abney moved to SCI-Camp Hill on October 31, 2013, misrepresenting that she had leave of court to depose Abney in Cumberland County, Pennsylvania, despite knowing that leave had never been granted. Furthermore, Abney alleges that Basial orchestrated this prisoner transfer from

Huntingdon to Cumberland County on a day when she knew Abney was scheduled to meet with his lawyer to prepare for a deposition in *Abney I*, thereby intentionally interfering with Abney's access to his lawyer, and as a further example of her effort to harass and intimidate Abney for bringing *Abney I,* in which discovery had become contentious.  Abney further claims that Basial effectively lied to the court during a conference, during which the court was led to believe that Abney remained at SCI-Houtzdale where he would be deposed by videoconference. According to Abney, Basial declined to inform the court that she had already directed his transfer to SCI-Camp Hill prior to the conference, and that he was, in fact, en route prior to her securing leave to take his deposition, and without leave to have him transferred.

Abney claims further that after arriving at SCI-Camp Hill, he continued to be abused and intimidated by DOC employees who were aware that he had been moved to the prison to give testimony against fellow DOC employees.  He claims that while at SCI-Camp Hill, defendant Whalen deprived Abney of his thyroid medication, and interfered with his scheduled phone call with counsel by arbitrarily forcing Abney to take a shower and then to take an abbreviated call with his lawyer while dripping wet, clad only in a towel.  Abney claims that even after his deposition on November 4, 2013, Whalen continued to deprive him of his medication out of retaliation and in effort to discourage him from proceeding with

his lawsuit.  Abney alleges that Basial arranged for, acquiesced in, or otherwise knew of and tolerated Whalen's abuse of Abney.

Abney also claims that Basial made special arrangements for Abney's return to SCI-Houtzdale in a way to facilitate further retaliation and intimidation.  Abney avers that prior to being placed on a bus to a transfer at SCI-Smithfield, he was stripped of his clothing and made to ride in a travel jumpsuit.  Upon arrival at SCI-Smithfield, Abney claims that his jump suit was removed and he was forced to stand exposed in his underwear for approximately two hours in a cold room in the presence of clothed prisoners.  He was not provided with clothing for several hours, after transport officers from SCI-Houtzdale arrived to collect him. Abney claims that defendants Shoop and Fisher treated him in this manner in furtherance of a conspiracy to retaliate against him for his litigation activity, and knew that Abney's counsel was scheduled to tour SCI-Smithfield as part of her discovery into *Abney I* just two days later.  According to Abney, Basial was the individual who arranged for him to be returned to SCI-Houtzdale via SCI-Smithfield, which is where Abney had been held following the June 2012 beating alleged in *Abney I*. Abney alleges that Basial not only arranged for the trip itinerary, but that she notified defendants Shoop and Fisher about the reasons for Abney's trip, helping to further the conspiracy to retaliate against Abney.

The alleged misconduct occurred in the summer and fall of 2013, and Abney's six grievances filed with prison authorities regarding the alleged mistreatment were finally denied by April 25, 2014, yet Abney did not file the instant suit until February 25, 2016, and amended that pleading on July 11, 2016, more than two years after the last grievance was denied at final review.[1]   The reason for this appears to be that Abney had endeavored to supplement his complaint in *Abney I* to include these new allegations.   Thus, on December 1, 2015, Abney sought leave to supplement his complaint in that first case.   Leave to supplement was denied on June 16, 2016, since the court found that Abney's new claims should be brought in a separate action, and that his concerns regarding the potential running of the two-year statute of limitations applicable to claims brought under 42 U.S.C. § 1983 was unwarranted.

---

[1]  There is a dispute between Abney and the defendants regarding his efforts to grieve the alleged mistreatment, with Abney disputing the evidentiary support offered by the defendants, and suggesting that the defendants have not conclusively established a failure to exhaust on the current record.  With respect to his claims relating to his stay at SCI-Camp Hill, Abney represents that he also endeavored to file a grievance regarding defendant Whalen's harassment and intimidation, identifying Whalen as one of "two staff members at Camp Hill" whom he alleges violated his rights (Am. Compl. ¶ 88), but those grievances are not contained anywhere in the packet of purportedly true-and-correct copies of Abney's grievances and appeals that the defendants have attached to their motion to dismiss.  Abney claims that he made two separate inquiries to an official at SCI-Camp Hill about the status of the grievances, but his inquiry was never answered.  (*Id.*)

The defendants moved to dismiss Abney's new claims on July 25, 2016. The motion was fully briefed as of September 6, 2016, and is now ripe for disposition.

## III.   <u>STANDARD OF REVIEW</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In reviewing a motion to dismiss, a court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261

(3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* However, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Further, it is not proper to "assume that [the plaintiff] can prove facts that [he] has not alleged. . ." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Following the rule announced in *Ashcroft v. Iqbal*, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.* To determine the sufficiency of a complaint under the pleading regime established by the Supreme Court, the court must engage in a three step analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)(quoting *Iqbal*, 556 U.S. at 675, 679).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief" and instead must "'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

As the court of appeals has observed:   "The Supreme Court in *Twombly* set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'  *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.'  Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' "  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In undertaking this task, the court generally relies only on the complaint, attached exhibits, and matters of public record.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).   Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also, U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment.")   However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien &Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV.   **DISCUSSION**

The plaintiff has brought his retaliation, conspiracy and related claims pursuant to 42 U.S.C. § 1983.   Section 1983 provides private citizens a cause of action for violations of federal law by state officials.   The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

12

> within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002);

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under the

statute, a plaintiff must allege "the violation of a right secured by the Constitution

and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).

The defendants have moved to dismiss the complaint for a variety of

reasons, including Abney's asserted failure to exhaust many of his claims prior to

bringing this action; the running of the two-year statute of limitations governing

claims brought under § 1983; and based on an assertion of absolute immunity with

respect to Attorney Basial. The defendants also generally argue that Abney has

failed to plead facts sufficient to state a claim for relief.

### A. Exhaustion

As an initial matter, the defendants argue that nearly all of Abney's claims

must be dismissed because he has failed to exhaust available administrative

remedies prior to filing suit. The defendants have attached what they purport to be

the entirety of Abney's grievances filed with respect to the claims brought in this

case, though they have not included an affidavit or declaration from anyone at the DOC attesting to the accuracy or completeness of these records.   Instead, the defendants urge the court to accept the records as true and correct, and conclude at the outset that there can be no uncertainty about the accuracy of these records to prevent the court from dismissing the claims out of hand.

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all avenues of relief available within a prison's grievance system before bringing a federal civil rights action concerning prison conditions.   42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000).   This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."   *Porter v. Nussle*, 534 U.S. 516, 532 (2002).   The exhaustion requirement is mandatory.   *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same).   Moreover, "it is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement."   *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies, an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of administrative remedies, but also substantial compliance with procedural requirements. *Id.* at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

An inmate's failure to comply with the exhaustion requirement prescribed by the PLRA is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and the burden of proving a failure to exhaust rests with the defendants, *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections Inmate Grievance Policy consists of a three-step Inmate Grievance System that provides inmates with a means of seeking review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve problems informally, an inmate may submit a written grievance to the institution's Grievance Coordinator for initial review. This must occur within 15 days after the events upon which the claims are based. "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a

statement of the facts relevant to the claim.  The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)."  DC-ADM 804, § 1(A)(11).

Within 15 days of an adverse decision by the Grievance Coordinator, an inmate may appeal to the Facility Manager of the institution.  Thereafter, within 15 days of an adverse decision by the Facility Manager, the inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals.  An appeal to final review cannot be completed unless an inmate complies with all established procedures.  Thus, an inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue.  *See Booth*, 206 F.3d at 293 n.2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same); see also DC-ADM 804 (attached as Ex. 10 to Doc. 28).

Of potential relevance to the instant action, "[a]s for the failure [ ] to identify named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form.  And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure

16

to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential).[2] At the same time, although the policy requires inmates to "identify the individuals directly involved in the event(s)," the Supreme Court has observed that "nothing in the [PLRA] imposes a 'name all defendants' requirement." *Jones v. Bock*, 549 U.S. at 217.

The defendants argue that Abney has not exhausted any of the claims brought in this action with the exception of the claim that defendant Shoop left Abney in his underwear in a cold holding cell during a layover at SCI-Smithfield. The defendants note that they received no grievances relating to Abney's stay at SCI-Camp Hill, and that the plaintiff did not identify defendants Basial, Whalen, Fisher, Younker, Snyder, Hills, Booher, Nickum or Myers in any of the grievances that they have submitted with their moving papers. The defendants have attached a number of grievances as exhibits to their motion to dismiss, but have not filed a declaration or any other attestation that the records are complete and represent the entirety of Abney's grievance history with respect to the claims brought. The defendants simply invite the court to "consider the grievances as indisputably authentic documents." (Def. Br., 11 n.2.)

---

[2] Although *Williams* is a non-precedential opinion, it is nevertheless persuasive as a "paradigm of the legal analysis [the court] should . . . follow." *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 n.12 (3d Cir. 1996).

For his part, Abney argues that it would be inappropriate for the court to dispose of his claims on the motion to dismiss alone, since the defendants have not offered a declaration by a records custodian, and because to accept the defendants' position would require that the court disregard Abney's allegations that he filed multiple grievances regarding these matters.   Moreover, Abney argues that to accept the defendants' submission on its face would require the court to assume that the defendants' submission reflects not only complete copies of the grievances, but also that Abney filed no other grievances than those attached, and to assume that the operative grievance policy provided Abney with avenues of recourse that he failed to exhaust.

The court recognizes that in *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004), the Court of Appeals specifically addressed the issues of whether a court may consider a failure-to-exhaust defense when ruling on a motion to dismiss.   In *Spruill*, the court observed that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id.* at 223 (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)).   *See also Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss."); *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (noting that

motions to dismiss may be based on failure to exhaust grounds in certain instances).

This presents a close call in this case, particularly since Abney's challenge the accuracy of the defendants' representations regarding the grievances is itself notably lacking in evidentiary detail.  However, the court finds that the most prudent course, and the fairest, is to deny the motion to dismiss on exhaustion grounds at this stage.  The defendants' motion invites the court to do too much, particularly since they would have the court consider documents that fall outside of the pleadings, and to assume the accuracy of those documents and their completeness, and that no other avenues of recourse were available to Abney or pursued – something that would effectively have the court ignore Abney's allegations.  In particular, it is notable that Abney alleges that he endeavored to grieve issues that he says occurred at SCI-Camp Hill, but that his grievances were ignored.  The court should decline the invitation to declare, at the outset of this case, without the benefit of even a declaration from a DOC records custodian, that Abney's asserted failure to exhaust his administrative remedies bars all of his claims except those brought against defendant Shoop.

Furthermore, the defendants appear to assume that Abney was required to grieve his claims against Attorney Basial prior to bringing this action.  It is not clear that Abney was required to name Basial in his grievances, or to grieve her

conduct, as she is not a DOC employee, but was involved in the matters complained of solely in her role as counsel for DOC employees. The defendants offer no legal support for the assertion that Abney was required to name Basial in his grievances to prison officials regarding the conditions of his confinement, and in the absence of such authority, and on the record that is at present underdeveloped regarding the plaintiff's alleged failure to exhaust his administrative remedies, it will be recommended that the court decline to dismiss all claims as violating the PLRA's exhaustion requirement.

As noted at the outset of this report, however, it appears that the issue of exhaustion may be one that would be capable of resolution through a properly supported motion for summary judgment that would allow the court to consider the parties' evidence on Abney's grievances and appeals, and make a more fully informed decision regarding the affirmative defense of failure-to-exhaust.

### B.  Statute of Limitations

The defendants next contend that all of the claims in this case are barred by the two-year statute of limitations applicable to claims brought under § 1983. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The length of the statute of limitations for a § 1983 claim is governed by the personal injury tort law of the state where the cause of action arose. The statute of limitations for a § 1983 claim arising in Pennsylvania is two years.") (citations omitted); 42 Pa. Cons. Stat. Ann.

20

§ 5524(2). The defendants note that the alleged abuse of inmate-witnesses in *Abney I* began in July 2013, and that the harassment and retaliation is claimed to have occurred in the late October and early November of 2013, but this action was not initiated until February 25, 2016, well beyond the two-year period that would ordinarily apply.  On these facts alone, the defendants assert that the court can declare the action to be untimely, and dismiss it as past the two-year statute of limitations.

Abney aptly notes that because it is an affirmative defense on which the defendant bears the burden of proof, a statute of limitations defense may be raised through a motion to dismiss only if it is clear from the face of the complaint that the action is time barred.  *Benak v. Alliance Capital Mgmt., L.P.*, 435 F.3d 396, 400 n.14 (3d Cir. 2006); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."); *Crump v. Passaic County*, 147 F. Supp. 3d 249, 259 (D.N.J.) ("Like qualified immunity, a statute of limitations is an affirmative defense not normally decided on a motion to dismiss.").

21

The statute begins to run when a plaintiff knew or should have known of the violation of his rights. *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989). Abney further notes that numerous courts have held that the statute of limitations is tolled during the time an inmate is exhausting his administrative remedies as required by the PLRA. *See Soto v. Leskowsky*, No. 1:CV-10-2366, 2011 WL 4498827, at *5 (M.D. Pa. Sept. 27, 2011) (collecting cases from the Sixth, Seventh and Ninth Circuits Courts of Appeal, as well as district courts from within the Third Circuit).

Abney argues that contrary to the defendants' suggestion otherwise, the expiration of the statute of limitations is not evident from the face of the complaint itself, and is further thrown into doubt by a number of other facts that warrant denying this aspect of the motion. Abney points to allegations in the amended complaint which indicate that he did not become aware of Basial's alleged involvement and orchestration of the alleged conspiracy of harassment and intimidation until the spring of 2014, and that the case was filed less than two years after this discovery. (Am. Compl., ¶ 112.) Abney thus disputes that the defendants' efforts to have this case disposed of on timeliness grounds with respect to any defendant involved in the precipitating event undergirding all other claims in this action: Abney's surprise transfer to SCI-Camp Hill on October 31, 2013.

Abney further argues that the other defendants who were not named until Abney filed an Amended Complaint on July 11, 2016, should not be able to rely on a statute-of-limitations defense as part of their motion to dismiss because their alleged misconduct was part of a pattern of continuing violations and were intimately connected to what he refers to as "the Basial conspiracy," (Pl. Br., 15), yet were not discovered until much later.

Furthermore, Abney persuasively notes that the claims he sought to file against the defendants at SCI-Huntingdon defendants were first asserted as early as December 1, 2015, when he moved for leave to file a supplemental complaint in *Abney I*. (*Abney I*, Docs. 130, 131.) That motion was denied on May 4, 2016, after the undersigned concluded that "the continuing wrongs theory would seem to permit Abney to bring these claims together in his newly filed lawsuit against all culpable conspirators while potentially avoiding the bar of the statute of limitations." (*Abney I*, Doc. 167, at 9.) Overruling Abney's objections to the undersigned's report and recommendation, the district court disagreed that requiring Abney to file his new claims in a separate action would cause him to be barred by the statute of limitations. (*Abney I*, Doc. 176, at 3.) The district court's order was entered on June 10, 2016. (*Id.*) Abney thus was given some assurance that at least some of his claims would not be deemed untimely if they were asserted in a new action.

Abney finally argues that the application of the continuing violations doctrine to this case should also foreclose a statute-of-limitations defense. The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). In order to benefit from the doctrine, a plaintiff must establish that a defendant's conduct is "more than the occurrence of isolated or sporadic acts." *West*, 45 F.3d at 755 (quotation omitted). In making this determination, courts are enjoined to consider at least three factors: "subject matter – whether the violations constitute the same type of [wrong], tending to connect them in a continuing violation; (2) frequency – whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence – whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to [commit the wrong]." *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). The focus of the doctrine is on "affirmative acts of the defendants." *Id.*

24

Based on the allegations set forth in the complaint, the claim regarding the late discovery of Attorney Basial's alleged involvement and administration of the alleged conspiracy, and the number of instances of alleged harassing conduct that the plaintiff has averred were part of a vast and secret conspiracy to intimidate and retaliate against him, and the periods during which the court finds that the statute of limitations would have been tolled, it is not clear from the face of the complaint that this action is time barred. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (statute of limitations defense may only prevail in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading."). The court should refrain from disposing on this action on statute-of-limitations grounds at this early stage.

## C.     Absolute Immunity

Next, Attorney Basial asserts that as a government lawyer defending employees of the DOC in a civil rights, she is entitled to absolute immunity from any claim in this action. This defense is unavailing against the claims in this case.

Attorney Basial offers little substantive legal support for the proposition that her mere role as a lawyer representing government employees entitles her to absolute immunity. Indeed, "'[m]ost public officials are entitled only to qualified immunity' from Section 1983 actions." *Light v. Haws*, 472 F.3d 74, 77 (3d Cir.

2007) (quoting *Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006));

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (ordinarily, "[q]ualified

immunity represents the norm") (internal quotation marks and citations omitted).

However, in *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held

that, based on the immunity that was historically conferred upon prosecutors at

common law, "state prosecutors are absolutely immune from liability under § 1983

for actions performed in a quasi-judicial role."   *Light*, 472 F.3d at 77 (citing

*Imbler*, 424 U.S. at 427).   The reason for the broad blanket of immunity for the

prosecutors was "not grounded in any special esteem for those who perform these

functions, and certainly not from a desire to shield abuses of office, but because

any lesser degree of immunity could impair the judicial process itself."   *Kalina v.

Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks and citations

omitted).

Since *Imbler*, the Third Circuit Court of Appeals has extended absolute

immunity to those who serve in a quasi-judicial role, such as "participation in court

proceedings and other conduct intimately associated with the judicial phases of

litigation" since these are "actions performed in a quasi-judicial role."   *Carter v.

City of Phila.*, 181 F.3d 339, 356 (3d Cir. 1999) (internal quotation marks and

citations omitted).   The court has given other examples "of prosecutorial actions

that warrant absolute immunity, 'acts undertaken by a prosecutor in preparing for

the initiation of criminal proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" *Light*, 472 F.3d at 77 (citing *Yarris*, 465 F.3d at 135). *See also McArdle v. Tronetti*, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that a prison physician and prison counselor were absolutely immune as to their testimony in court and psychiatric reports to the judge, as that was an "'integral part of the judicial process'").

Courts are required to "take a functional approach to questions of absolute immunity, and should focus on 'the nature of the function performed, not the identity of the actor who performed it and evaluate[ ] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function.'" *Light*, 472 F.3d at 78 (quoting *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001)). In the exercise of this functional analysis, the Third Circuit has found that absolute immunity will attach to certain quasi-judicial and quasi-prosecutorial functions, but appear nearly always to be based on a finding that the duties involved are "functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action"). *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3d Cir. 1991). *See, e.g.*, *Ernst v. Child & Youth Servs. of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997) (applying functional analysis and concluding that child welfare workers "are entitled to

absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings").

Moreover, the burden is on the party claiming entitlement to absolute immunity to prove that the immunity should attach. *Light*, 472 F.3d at 80; *see also Burns v. Reed*, 500 U.S. 478, 486 (1991) ("[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."); *Forsyth v. Kleindienst*, 599 F.2d 1203, 1212 (3d Cir. 1979) (noting that there is "a heavy burden on . . . defendants to demonstrate a need for protection greater than that provided by qualified immunity").

In this case, Attorney Basial has not demonstrated that her role as a deputy attorney general defending the DOC employees in a civil action automatically entitles her to absolute immunity from suit. Furthermore, Basial does not acknowledge that the allegations against her are not for matters that she undertook in the course of a quasi-prosecutorial role, of which none is apparent here. Instead, the allegations against her claim that she orchestrated a plot to harass and intimidate Abney out of retaliation for his filing a civil action against corrections officers. Her role as defense counsel in that case does not appear to come within the narrow scope of quasi-judicial or quasi-prosecutorial functions that have been deemed to warrant absolute immunity, and she has not carried her burden of demonstrating that absolute immunity attaches in this action merely by virtue of

28

her serving as defense counsel, where her alleged conduct cannot be read to have taken place as part of a judicial proceeding.  Because she has not supported her claim to absolute immunity, and because the case law in this field strongly suggests that such immunity would be unavailable to her in any event, the court should deny the motion to dismiss on absolute immunity grounds.

### D.   Retaliation

Next, the defendants argue that Abney has failed even to plead a cause of action for First Amendment retaliation.

The gravamen of this litigation is Abney's claim that the defendants engaged in a conspiracy to retaliate against him for his exercise of constitutionally protected rights – namely, the filing of a federal civil action alleging that prison guards subjected him to a severe beating.  In order to state a claim for First Amendment retaliation, a prisoner must allege (1) that he engaged in constitutionally protected conduct, (2) that the defendants subjected him to an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) that there exists a causal link between the exercise of his constitutional rights and the adverse action taken against him.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

At this stage of the litigation where we are limited to an assessment of the pleadings Abney has met all three of these prongs in the amended complaint.  First,

he has alleged that he engaged in First Amendment activity by filing and prosecuting *Abney I*.  Second, he has alleged that the defendants subjected inmate-witnesses in that case to beatings and intimidation.   He claims that he was transported improperly to SCI-Camp Hill specifically to interfere with his communication with counsel in *Abney I*, and in order to prevent him from preparing for that litigation with his lawyer.  He alleged that upon transfer to SCI-Camp Hill he was deprived of medication, and that his communication with his counsel was further interfered with specifically out of retaliation for his litigation activity.  He also claims that his return to SCI-Houtzdale, by way of a stop at SCI-Smithfield, was mishandled in order to retaliate against him further, by causing him to be stripped of his clothing and placed in a cold cell with clothed inmates while clad only in his boxer shorts for more than two hours.   Abney has specifically pled that the alleged adverse actions were undertaken to intimidate and retaliate against him.   Thus, the amended complaint alleges sufficient facts in support of each of the three prongs applicable to a First Amendment retaliation claim.

The defendants essentially disregard Abney's well-pleaded allegations, and instead resort to general assertions in support of their motion.  Thus, the defendants cite to familiar caselaw holding that the mere transfer of a prisoner, in and of itself, will not be deemed retaliatory.  But Abney has not alleged that a prison transfer,

standing alone, is retaliatory; to the contrary, he has alleged that Attorney Basial conspired with DOC officials to orchestrate Abney's transport to SCI-Camp Hill specifically to retaliate against him and to interfere with his planned meeting with his attorney, under the guise of having Abney transported for court proceedings that were not scheduled, and in contravention of OAG-DOC policy.

The defendants also argue that because five months had elapsed between the time he filed *Abney I* and the time he was subjected to a surprise and allegedly improper prison transfer, this temporal gulf should entirely preclude Abney from stating a claim for retaliation.  But this disregards Abney's overarching claims of retaliation, which began with the beatings and intimidation of witnesses, the alleged refusal of Attorney Basial to do anything about the misconduct once she became aware of it, and which resulted in her allegedly orchestrating the prison transfer specifically to intimidate and harass him for bringing *Abney I*.  The court does not find that the passage of time is, at this stage of the litigation, a sufficient basis to dismiss Abney's retaliation and conspiracy claims based solely upon an assessment of the sufficiency of the pleadings.

At bottom, the defendants are making an argument that is more suited to a motion for summary judgment, where they may test whether Abney has any evidence to support his theory of retaliation in this case.  However, at this stage, because the amended complaint alleges sufficient facts to state a claim for First

Amendment retaliation, and because the defendants' brief essentially disregards or misinterprets those well-pleaded allegations, it is recommended that the motion to dismiss the retaliation claims be denied.

### E.   Conspiracy

Lastly, the defendants move to dismiss Abney's claims that the defendants all conspired with one another to retaliate against him.  The defendants offer very little in support of this aspect of their motion, other than to describe this claim as a "wild conspiracy theory."  (Def. Br., 18.)  The court agrees that Abney's claims regarding the conspiracy are startling and even extraordinary, particularly with respect to the allegation that the entire conspiracy was allegedly administered and overseen by a Senior Deputy Attorney General.   Nevertheless, the amended complaint includes plausible – if highly unusual and shocking – allegations that could support a claim that the defendants conspired to violate his civil rights, and the motion to dismiss this claim should be denied at this time.[3]

---

[3]   The amended complaint purports to assert a claim for conspiracy in violation of 42 U.S.C. § 1985(3), but the parties have proceeded in their briefs as though the plaintiff is alleging a conspiracy under § 1983. Because the parties appear to be proceeding under a § 1983 theory, the court has construed the claim in that way.  However, in the interest of completeness it is noted that "in order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy, (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).  Although Abney has alleged in various

In order to state a claim for civil conspiracy under 42 U.S.C. § 1983, a plaintiff must demonstrate (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014). A plaintiff must allege that there was an agreement or a meeting of the minds to violate his constitutional rights. *Id.* "Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient." *Labalokie v. Capitol Area Intermediate Unit*, 926 F. Supp. 503, 508-09 (M.D. Pa. 1996) (quoting *Loftus v. SEPTA*, 843 F. Supp. 981, 986-87 (E.D. Pa. 1994)). "If the court concludes that the allegations are insufficiently particular . . . [and] the lack of specificity results from the defendant's control of relevant information, the court must permit a reasonable amount of discovery under the circumstances." *Id.* at 509.

In this case, Abney has made numerous allegations of conspiratorial conduct among the defendants, and he has described the period of the conspiracy and its

---

places in the amended complaint that some of the defendants were motivated by invidious racial animus, he has not made such an allegation in the context of his conspiracy claim in Count I of the complaint. (Am. Compl. ¶¶127-132.) Regardless of whether Abney is basing his conspiracy claims under § 1983 or § 1985(3), he should be directed to amend his pleading to make this clarification.

object.  He has alleged that guards at SCI-Huntingdon conspired with one another to intimidate and terrorize inmate-witnesses in mid-July, 2013; that their exact words were conveyed to inmate-witnesses; and that Attorney Basial was made aware of the misconduct and acquiesced in it.  (Am. Compl. ¶¶ 31-40.)

Abney alleges that the conspiracy continued into October, 2013, during meetings between SCI-Huntingdon guards and Attorney Basial, during which time inmate-witnesses purportedly overheard conversations evidencing collusion. Abney even alleges that there is video evidence of this meeting between conspirators, and he alleges that the guards who are defendants in this case agreed to suppress part of what they had planned to tell Attorney Basial, who was later informed about the misconduct and their role in it, yet again acquiesced in the conduct.  (*Id.* ¶¶44-52.)

Abney contends that his irregular and improper transfer among  prisons was orchestrated by Basial and DOC staff to harass and intimidate Abney for bringing litigation against DOC employees.  (*Id.* ¶¶77-79, 98-99, 100-104.)

At this stage of the litigation, it is submitted that Abney has set forth plausible factual allegations to support a claim of conspiracy, and this claim should not be disposed of through a motion to dismiss.

We close with an observation, a recommendation and a cautionary admonition. Litigation entails conflict, a clash of ideas designed to lead to the

truth. Sometime, however, for adversaries in litigation this conflict can have a corrosive effect. Zealous advocates may confuse advocacy with artifice, and may reach unwarranted conclusions regarding one another. Recognizing the inherent conflicts in litigation, all counsel are well-advised to refrain from casually ascribing the worst of motives to their opposing counsel.

Here the pleadings contain allegations of grave misconduct against counsel. Such allegations are not to be lightly made, and are subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure. While the limited scope of our review on a motion to dismiss does not permit the court to reach and resolve these allegations, a properly documented motion for summary judgment would compel the party making these allegations to support those allegations by more than information and belief. We recommend that the parties follow this course so the factual basis for these grave allegations may be promptly tested, and resolved.

## V.   <u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that the defendants' motion to dismiss be denied at this time, without prejudice to them renewing some or all of their arguments in a properly supported motion for summary judgment at which time the issues relating to Abney's efforts to exhaust his administrative remedies and the availability of any immunity defenses, and whether there is sufficient

evidentiary support for Abney's substantive claims may be more properly considered.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: October 13, 2016

36