**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLARENCE ABNEY, | : | Civil No. 1:16-CV-00350 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Jennifer P. Wilson |
| | : | |
| LISA W. BASIAL, *et al.*, | : | |
| | : | |
| Defendants. | : | Magistrate Judge Martin C. Carlson |

## MEMORANDUM

Before the court are the Defendant's motion for summary judgment, a report

and recommendation from United States Magistrate Judge Martin C. Carlson

addressing the motion, and objections to the report and recommendation filed by

Plaintiff Clarence Abney ("Abney").  (*See* Docs. 93, 113–14.)  For the reasons that

follow, Judge Carlson's report and recommendation (Doc. 113) is adopted in its

entirety and Abney's objections to the report and recommendation (Doc. 114) are

overruled.  Accordingly, Defendants' motion for summary judgment (Doc. 93) is

granted.

### STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the

district court is required to conduct a de novo review of the contested portions of

the report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3);

*Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may

1

accept, reject, or modify the magistrate judge's report and recommendation in whole or in part. 28 U.S.C. § 636(b)(1). The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.* "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).

De novo review of a magistrate judge's report and recommendation is not required where no objections to the report and recommendation have been raised. *Univac Dental Co. v. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). Instead, the court is only required to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* (quoting Fed. R. Civ. P. 72 advisory committee's note to 1983 addition). De novo review is also not required where a party raises only general objections to the report and recommendation. *Goney v. Clark*, 749 F.2d 5, 6–7 (3d Cir. 1984). "To obtain de novo determination of a magistrate's findings by a district court, 28 U.S.C. § 636(b)(1) requires both timely and specific objections to the report." *Id.* at 6.

## SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'" *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## PROCEDURAL HISTORY

Abney first filed suit in this case on February 25, 2016, and he subsequently filed an amended complaint on July 11, 2016. Abney's factual allegations arise indirectly from another case currently pending before this court, *Abney v. Younker*, 13-CV-01418 ("*Abney I*"). Abney alleges that Defendant Lisa Basial ("Basial"), who previously served as defense counsel in *Abney I*, orchestrated a conspiracy among the various defendants to infringe on his constitutional rights as retaliation for the fact that he was litigating his claims in *Abney I*.

According to the factual allegations in Abney's amended complaint, the actions that give rise to the present suit began in the summer of 2013, when various defendants at SCI Huntingdon began intimidating inmates who had witnessed the assault on Abney that was being litigated in *Abney I*. (Doc. 22 ¶¶ 26–31.) This led Abney's counsel, Marianne Sawicki ("Sawicki"), to contact Basial to inform her that witnesses in *Abney I* were being intimidated and to ask her to tell her clients not to discuss *Abney I* with potential witnesses. (*Id.* ¶ 31.) After this communication with Sawicki, Basial allegedly communicated with other defendants at SCI Huntingdon, who subsequently beat up an *Abney I* witness. (*Id.* ¶¶ 32–33.) Several prisoners allegedly witnessed the beating and overheard the defendants saying things to indicate that it was because the witness was going to testify in *Abney I*. (*Id.* ¶¶ 34–36.)

In addition to the intimidation of witnesses, the amended complaint alleged that Defendant Younker coached Defendant Snyder on what to say in his deposition in *Abney I*. (*Id.* ¶¶ 46–48.) Sawicki informed Basial of this coaching, but Basial took no action to stop it from happening and instead allegedly "let the Huntingdon Defendants know that she acquiesced in it and approved of it." (*Id.* ¶ 50.)

The amended complaint alleges that in October 2013, Basial caused the DOC to transport Abney from SCI Houtzdale to SCI Camp Hill for purposes of conducting a deposition. (¶¶ 55–72.) During transport to SCI Camp Hill and while he was incarcerated in that prison, Abney was allegedly subjected to abuse and harassment from various DOC defendants, including taking away his medication, forcing him to take a call from Sawicki while he was still wet from a shower, and limiting his ability to have phone calls with Sawicki. (*Id.* ¶¶ 73–91.) Basial was informed of these actions but allegedly acquiesced in them. (*Id.*)

During his return trip from SCI Camp Hill to SCI Houtzdale, Abney was made to remove his jumpsuit and given a travel jumpsuit. (*Id.* ¶ 92.) He then had a brief layover at SCI Smithfield, during which he was told to remove his travel jumpsuit. (*Id.* ¶ 93.) Abney was not given clothes to wear until later that day when officers from SCI Houtzdale arrived to transport him back to that prison. (*Id.* ¶¶ 95–96.)

According to the amended complaint, Basial communicated and colluded with the other defendants throughout the period of time giving rise to Abney's claims:

> On information and belief, DAG Basial acted in communication and collusion with DOC Staff at the four prisons—Huntingdon, Houtzdale, Smithfield, and Camp Hill—including some of the defendants whom she represented in *Abney v. Younker*. Details of their collusion await discovery.

(*Id.* ¶ 113.) Abney alleges that this communication and collusion by Basial was done to intimidate Abney, retaliate against him for the filing of *Abney v. Younker*, and discourage him from actively pursuing his claims in that case. (*Id.* ¶ 114.) The amended complaint raises claims for conspiracy to obstruct federal testimony in violation of 42 U.S.C. § 1985, cruel and unusual punishment in violation of the Eighth Amendment, infringement of free speech in violation of the First Amendment, infringement of the right to petition the government for redress of grievances in violation of the First Amendment, and conspiracy to violate constitutional rights. (*Id.* ¶¶ 127–57.)

On January 26, 2017, United States District Judge Yvette Kane denied the Defendants' motion to dismiss. (Doc. 34.) On March 30, 2018, Judge Kane granted summary judgment to Defendants Whalen, Fisher, Younker, Snyder, Hills, Booher, Nickum, and Myers, finding that Abney had failed to exhaust his administrative remedies as to his claims against those defendants. (Doc. 78.) As a

result of Judge Kane's order, Basial and Shoop are the only defendants who remain in the case, though Judge Kane's order deferred the entry of judgment in favor of the other defendants until the conclusion of the case. (*Id.*)

On July 15, 2019, Defendants moved for summary judgment, arguing that there is insufficient evidence for Abney's claims to survive to trial. (Docs. 93, 95.) Abney opposed the motion on August 25, 2019, Defendants filed a reply brief on September 20, 2019, and Abney filed a sur reply on September 23, 2019. (Docs. 106, 109, 112.) Judge Carlson addressed the motion for summary judgment in a report and recommendation on October 8, 2019. (Doc. 113.) The undersigned was assigned to the case as the presiding judge pursuant to a verbal order from Chief United States District Judge Christopher C. Conner on November 20, 2019.

## JUDGE CARLSON'S REPORT AND RECOMMENDATION

Judge Carlson's report and recommendation recommends granting the Defendants' motion for summary judgment in its entirety. (Doc. 113.) Judge Carlson first considers Abney's constitutional claims against Defendant Shoop. (*Id.* at 11.) He finds that Shoop is entitled to summary judgment as to Abney's Eighth Amendment claim because a prisoner being denied clothing for a brief period of time does not violate the Eighth Amendment. (*Id.* at 15.)

Turning to Abney's First Amendment claims against Shoop, Judge Carlson first concludes that a First Amendment retaliation claim against Shoop fails

because Abney has not introduced any evidence to show that his protected First Amendment activity was a motivating factor behind Shoop's actions. (Doc. 113 at 17.) Judge Carlson then concludes that Abney's First Amendment access to the courts claim against Shoop fails because Abney cannot show any actual injury to his right of access to the courts from Shoop briefly taking away Abney's clothing. (*Id.* at 18.) Judge Carlson additionally concludes that, even if Shoop should be denied summary judgment on the merits of Abney's claims, he should nonetheless be granted summary judgment because he is entitled to qualified immunity. (*Id.* at 19–21.)

After determining that Shoop should be granted summary judgment, Judge Carlson analyzes Abney's claims against Defendant Basial. Judge Carlson finds that Abney's First Amendment claims against Basial fail because "Abney has presented no evidence to support his theory that Basial's decision to transport him for the deposition was retaliatory or designed to impede his access to the courts." (Doc. 113 at 23.) Judge Carlson finds that rather than being motivated by an intent to harass or intimidate Abney, Basial's decision to transport him from SCI Houtzdale to SCI Camp Hill was motivated by her own convenience in conducting Abney's deposition. (*Id.* at 24.) Judge Carlson further finds that there is no evidence to support Abney's claims that Basial was involved in the intimidation of

any witnesses, and that Basial would be entitled to qualified immunity as to Abney's claims against her. (*Id.* at 27–30.)

Finally, Judge Carlson considers Abney's claims of civil conspiracy against the Defendants. (*Id.* at 30.) Judge Carlson first concludes that the Defendants should be granted summary judgment on the conspiracy claims because the underlying torts on which the conspiracy claims are based—Abney's constitutional claims—should be dismissed on their merits. (*Id.*) Judge Carlson further concludes that the Defendants should be granted summary judgment because Abney has introduced no evidence to support a finding that there was an agreement between the Defendants. (*Id.* at 31–35.)

## ABNEY'S OBJECTIONS

Abney filed objections to the report and recommendation on October 22, 2019, raising seven objections. (Doc. 114.) Abney's first objection is that the report and recommendation misapprehends his First Amendment claim against Basial as one for retaliation, and that such a misapprehension "distorts [the report and recommendation's] view of the evidence of Ms. Basial's wrongful conduct." (*Id.* at 5.)

Abney's remaining arguments focus on the proposition that, contrary to Judge Carlson's conclusions, evidence of record supports his claims against Defendants Basial and Shoop. Abney argues that there is sufficient evidence of

record for a finder of fact to determine that (1) Basial lied to the Office of Population Management to effectuate Abney's temporary transfer to SCI Camp Hill in violation of federal law and with the motive to prevent Abney from conferring with his attorney prior to his deposition; (2) Basial's actions interfered with his ability to litigate both *Abney I* and the present case; (3) Basial was complicit in the intimidation of *Abney I* witnesses; (4) Basial's wrongdoing precludes a finding that she is entitled to qualified immunity; (5) Shoop violated Abney's Eighth Amendment rights and is therefore not entitled to qualified immunity; and (6) there was sufficient contact between the Defendants to support a civil conspiracy claim.  (*See id.* at 6–30.)

Defendants responded to Abney's objections on November 14, 2019.  (Doc. 117.)  Defendants first argue that Abney's objections do not warrant de novo review of the report and recommendation because the objections raised are identical to the arguments that were raised before the magistrate judge.  (*Id.* at 1– 2.)  Defendants then argue that Abney's First Amendment claim was properly construed as a retaliation claim.  (*Id.* at 2–3.)

Turning to Abney's claims against Basial, Defendants first argue that the evidence of record does not support a finding that Basial lied or engaged in any other wrongdoing, or that Basial's actions caused Abney any injuries.  (*Id.* at 3–6.)

11

Defendants then argue that there is no evidence to support a finding that Basial was complicit in the intimidation of witnesses. (*Id.* at 6–7.)

Defendants similarly argue that Abney's objections related to the claims against Shoop should be overruled. Defendants note that Shoop's alleged knowledge of the claims against the other defendants in *Abney I* and *Abney II* is not sufficient to establish that he was part of a conspiracy with the other defendants. (*Id.* at 8.) Defendants then attack Abney's argument that Shoop violated the Eighth Amendment because Abney was the only inmate who was unclothed in the cell at SCI Smithfield. (*Id.* at 9.) Defendants note that the only evidence Abney cites in support of this argument is that Defendants admitted the fact in their answer, which they did not do. (*Id.*) Defendants additionally argue that, even if Abney were unclothed while other inmates were clothed, this would still be insufficient to establish a violation of the Eighth Amendment. (*Id.*) Finally, Defendants argue that there is no record evidence to support Abney's conspiracy claim, since there was no evidence of an agreement between the parties. (*Id.* at 11–12.)

Abney filed a reply brief on November 21, 2019. (Doc. 118.) Abney reiterates his several arguments in support of his objections, but cites no additional evidence. (*Id.*)

At the outset, the court notes that the parties disagree as to the proper standard of review in this case. Abney argues that the proper standard is de novo review of Judge Carlson's report and recommendation, while Defendants argue that the report and recommendation should only be reviewed for clear error. (*See* Doc. 114 at 30; Doc. 117 at 1–2; Doc. 118 at 2.) The court need not determine whether de novo review or clear error review is the proper standard because Judge Carlson's report and recommendation withstands district court scrutiny under either standard. Nevertheless, because it is the more exacting standard, the court will review the portions of Judge Carlson's report and recommendation to which objections have been raised de novo.

Abney's first objection is that Judge Carlson's report and recommendation misapprehends his First Amendment claims as retaliation claims and that this misapprehension leads to a distorted understanding of the factual record. (Doc. 114 at 5.) This objection will be overruled because the court agrees with Judge Carlson's conclusion that the First Amendment claims can very clearly be understood as retaliation claims. Abney's amended complaint states his First Amendment claim against Basial as follows:

> In violation of the Free Speech Clause of the First Amendment of the U.S. Constitution, as incorporated by the Fourteenth, Defendant Basial retaliated against Plaintiff for filing *Abney v. Younker*, sought to deter

him from future testimony and from other protected activity by causing Plaintiff to be transported, under abusive conditions, in violation of federal statutes, and did so with wrongful intent to discourage Plaintiff from exercising his Free Speech rights.

(Doc. 22 at 29.) Similarly, Abney's First Amendment claim against Shoop is pleaded as follows:

In violation of the Free Speech Clause, Defendant Shoop retaliated against Plaintiff for filing *Abney v. Younker* because of its allegations against other corrections officers and because discovery in that matter was about to inconvenience SCI Smithfield with a site tour, and Shoop sought to deter Plaintiff from future testimony and other protected activity, by causing Plaintiff to stand in his underwear for about two hours under adverse conditions, with intent to discourage Plaintiff from exercising Free Speech rights.

(*Id.*)

Moreover, Abney has previously argued in this litigation that his First Amendment claims *were* pleaded as retaliation claims. In his brief in opposition to the Defendants' motion to dismiss on August 18, 2016, Abney made the following argument:

To state a claim for violation of free speech rights through retaliation, a prisoner plaintiff must plead three elements:

(1) constitutionally protected conduct, (2) an adverse action by prison officials " 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' " and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him."

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (alteration in *Rauser*). All three elements are plausibly pleaded here.

First, plaintiff was engaged in active litigation of *Abney v. Younker*. He had filed a complaint in this district, and he intended to testify about the misconduct of several DOC employees. Am. Compl. ¶¶ 15-21 & passim. The defendants do not contest the fact that litigation and testimony are constitutionally protected conduct.

Second, plaintiff lists adverse actions. His witnesses were beaten and intimidated, and his name was made synonymous with lynching. *Id.* ¶¶ 26, 27, 33-35, 126. Abney, in fragile health, was transported between prisons after his attorney assured him it could not happen, and the transport was timed to cause maximum distress to Abney by depriving him of the chance to prepare with his counsel for his deposition. *Id.* ¶¶ 57-61, 67, 70. Defendants continued to terrorize Abney at the distant prison by showing him that his counsel and even the court could not protect him. His thyroid medication was taken away, which caused distress when the untreated hyperthyroidism flared up and as well as anxiety because he knew this would lessen his ability to concentrate during the deposition. *Id.* ¶¶ 76, 86, 120. Abney was sent into the showers immediately before a scheduled phone call with counsel. He had to take the call dripping wet, and then the call was cut short. *Id.* ¶¶ 82-85. On the return trip, Abney was deprived of clothing and made to stand in his underwear in a cold holding cell surrounded by fully clothed prisoners. *Id.* ¶¶ 92-96, 106-08. The effect of this abuse over a five-day period was to impress upon Abney that the court and his counsel were powerless to keep DOC employees from abusing him and disabling him from giving testimony about misconduct of other DOC employees, as he was attempting to do in the course of the litigation of Abney v. Younker. *Id.* ¶¶ 123-25. The adverse action was calculated to deter the average person from continuing the litigation and from ever filing another lawsuit.

Third, plaintiff pleads the causal, motivational links between his litigation and the adverse action. The witnesses were terrorized explicitly in order to deter them from testifying in the litigation. *Id.* ¶¶ 18, 20, 21, 28, 33-36, 41. The irregular transport and its timing were

geared to impede Abney's participation in the litigation by making it hard for him to testify with a composed and calm mind. *Id.* ¶¶ 58-61, 67. Abney's thyroid medication was confiscated and his telephone conference with his counsel was disrupted a few days before a scheduled deposition for the same reason. *Id.* ¶¶ 81-87. The Smithfield Defendants, Shoop and Fisher, exacted a price from Abney during the layover on November 5, 2013 for his litigation, because they were being forced to give Abney's counsel a site tour of the prison two days later, on November 7, 2013, for discovery in that litigation. *Id.* ¶¶ 97-101, 104. All of the wrongful conduct alleged in this action occurred during a protected activity – plaintiff's litigation of *Abney v. Younker* – and was calculated to punish Abney for bringing it, prevent him from continuing it, and deter him from any similar action in the future.

All three of the *Rauser* prongs are pleaded here. Defendants' argument to the contrary cannot be credited. Defendants' brief distorts the content of the pleading, while neglecting to cite the pleading itself. *See* Br. in Supp. at 5-7. Count III states a claim for infringement of First Amendment free speech rights. It should not be dismissed.

(Doc. 29 at 19–21.) Abney cannot now argue that Judge Carlson erred by analyzing his First Amendment claims as retaliation claims when he previously argued that those same claims should survive a motion to dismiss because they plausibly pleaded claims for retaliation. Abney's first objection will accordingly be overruled.

As for Abney's remaining objections—all of which argue that Judge Carlson erred in his review of the factual record—the court has conducted a de novo review of Judge Carlson's report and recommendation and finds that he correctly concludes that there is insufficient evidence for Abney's claims against the

remaining defendants to survive a motion for summary judgment. The court will address these remaining objections seriatim.

Abney's second objection is that there is sufficient evidence of record for a finder of fact to find that Basial lied to the Office of Population Management to effectuate Abney's temporary transfer to SCI Camp Hill in violation of federal law and with the motive to prevent Abney from conferring with his attorney prior to his deposition. (Doc. 114 at 6–15.) Relevant to this objection, Judge Carlson concluded that "Abney has presented no evidence to support his theory that Basial's decision to transport him for the deposition was retaliatory or designed to impede his access to the courts," and that, instead, Basial's decision seemed to be motivated by her own convenience and trial schedule in other cases. (Doc. 113 at 23–24.)

The court agrees with Judge Carlson. It is not enough for Abney to introduce evidence that Basial directed him to be transferred to SCI Camp Hill; there must be evidence of a causal connection between Abney engaging in conduct protected by the First Amendment and Basial's subsequent decision to transfer him to SCI Camp Hill. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) ("A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link between

the exercise of his constitutional rights and the adverse action taken against him.'"
(quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001))).  Abney has
introduced no such evidence.  Accordingly, his second objection is overruled.

Abney's third objection is that Basial's actions interfered with his ability to
litigate both *Abney I* and the present case and therefore caused injuries to his right
of access to the courts.  According to Abney, Basial's actions interfered with his
ability to speak with his counsel prior to his deposition, which hindered his ability
to respond to affirmative defenses raised in *Abney I*.  (Doc. 114 at 15–17.)  Abney
further argues that claims in both *Abney I* and the present case were lost because
Basial's actions caused the statute of limitations to run.  (*Id.*)

While the court agrees with Judge Carlson's conclusion that Abney has not
introduced sufficient evidence to establish an injury to his access to the courts, the
court finds that such a conclusion does not actually need to be reached because
Abney has not introduced any evidence to establish the predicate fact that Basial
interfered with his access to the courts.  The record shows that although Basial
caused Abney to be temporarily transferred to SCI Camp Hill, Sawicki was still
able to speak with Abney prior to the scheduled deposition and was able to act as
Abney's counsel during the deposition.  While Abney alleges that Defendant
Whalen—who has already been granted summary judgment—interfered with
Abney's ability to speak with Sawicki prior to the deposition, *see* Doc. 22 ¶¶ 83–

85, there is no evidence that Basial was personally involved in this interference. Basial's act of having Abney transferred to another prison for the purpose of conducting a deposition is insufficient to support a claim that she interfered with Abney's right of access to the courts. The court will accordingly overrule Abney's third objection.

Abney's fourth objection is that there is record evidence to support the conclusion that Basial was complicit in the intimidation of *Abney I* witnesses. The court agrees with Judge Carlson's conclusion that Abney "presents no evidence to support his claim that Basial was involved in the intimidation of any witnesses." (Doc. 113 at 27.)

The court finds it troubling that Abney and his counsel continue to press the argument that Basial was involved in the intimidation of witnesses when they have presented no evidence of record to support such an argument. Abney argues that "circumstantial" evidence supports a finding of Basial's involvement, but the circumstantial evidence on which Abney relies is limited to the fact that Abney's counsel informed Basial of possible intimidation and that more intimidation allegedly occurred on the same day. (*See* Doc. 114 at 17–20.)

There is absolutely no evidence of record that Basial was involved in the intimidation of witnesses, no evidence that she encouraged the intimidation of witnesses, and no evidence that she acquiesced in the intimidation of witnesses.

Indeed, there is no evidence that she even *spoke* with the individuals who allegedly intimidated the witnesses after communicating with Abney's counsel. Thus the "circumstantial" evidence on which Abney and his counsel rely is solely Abney's self-serving description of his counsel's recollection of her own comments to Basial. This circumstantial evidence—to the extent it can even be characterized as such—is clearly insufficient to support a claim of wrongdoing against Basial.

Abney's fifth objection argues that Basial is not entitled to qualified immunity. (Doc. 114 at 20–23.) Because the court finds that Basial is entitled to summary judgment on the merits of Abney's claims, the court will overrule this objection as moot.

Abney's sixth objection argues that record evidence supports a finding that Shoop violated the Eighth Amendment and that, by extension, he is not entitled to qualified immunity. (*Id.* at 23–27.) Judge Carlson concluded that Shoop did not violate the Eighth Amendment because an inmate being denied clothing for two hours is insufficient to establish a violation of the Eighth Amendment where the denial does not threaten his health or safety. (Doc. 113 at 15.) This conclusion is supported by case law from the Third Circuit and will accordingly be adopted. *See, e.g.*, *Guinn v. Rispoli*, 323 F. App'x 105, 108 (3d Cir. 2009) (finding that the denial of clothing for fourteen days did not violate the Eighth Amendment where the denial did not cause the inmate physical harm); *Trammell v. Keane*, 338 F.3d

155, 165 (3d Cir. 2003) (finding that denial of clothing did not violate Eighth Amendment where the denial did not threaten the inmate's health or safety).[1]

Abney's final objection is that there was sufficient contact between the Defendants to support a civil conspiracy claim. (Doc. 114 at 27–30.) Abney argues that because there was circumstantial evidence in the form of Basial and Shoop speaking with other Defendants, there is sufficient evidence for his conspiracy claim to go to trial. (*Id.*) Relevant to this objection, Judge Carlson concluded that "Abney has not presented any evidence from which a factfinder could conclude that Shoop and Basial entered into an agreement to violate his rights." (Doc. 113 at 31.)

The court agrees with Judge Carlson that Abney has not produced any evidence to support a finding of an agreement between the Defendants. The mere fact that Defendants spoke with one another is insufficient to defeat a summary judgment motion; there must be evidence of an agreement between the Defendants. This is especially true in Basial's case, since she actually represented a number of her co-defendants in *Abney I*. Abney's argument would lead to the absurd result

---

[1] Abney additionally argues that Shoop violated the Eighth Amendment because Abney was unclothed in a cell with other men who were fully clothed. (Doc. 114 at 24.) The only evidence Abney offers to support this fact is that Defendants admitted it in their answer. (*Id.*) As Abney later acknowledged, however, such an argument was erroneous since Defendants had not admitted the fact in their answer. (Doc. 118 at 12 n.4.) The court will accordingly disregard this argument.

that the mere fact of an attorney speaking with her clients is independent evidence that the attorney is liable for a civil conspiracy. The court does not accept this argument. Therefore, because Abney has produced no evidence of an agreement between Defendants, his final objection will be overruled.

## CONCLUSION

For the foregoing reasons, Judge Carlson's report and recommendation is adopted in its entirety, and Abney's objections to the report and recommendation are overruled. Accordingly, the Defendants' motion for summary judgment is granted. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: January 30, 2020